OPINION
{¶ 1} Defendant-appellant, Eduardo Orlandi, was charged with assault, a violation of R.C. 2903.13. After a jury trial, he was found guilty and sentenced to 180 days of jail, which was suspended, $100 fine and two years of probation. Appellant filed a notice of appeal and raises the following eight assignments of error:
I. THE COURT ERRED BY NOT SUBSTITUTING THE ALTERNATE JUROR AND/OR GRANTING A MISTRIAL WHEN ONE OF THE JURORS COMMITTED UNINTENTIONAL MISCONDUCT BY ADMITTING AFTER TESTIMONY THAT SHE KNEW ONE OF THE WITNESSES.
II. THE JURY WAS NOT OF DEFENDANT'S PEERS BECAUSE IT FAILED TO INCLUDE AN (SIC) HISPANIC, A MEMBER OF DEFENDANT'S RACE, THEREBY DENYING DEFENDANT DUE PROCESS AND EQUAL PROTECTION.
III. THE COURT ERRED BY INCLUDING TESTIMONY FROM A NON-EXPERT ON THE CAUSE OF THE SCAR ON DEFENDANT'S FACE AS BEING CAUSED BY PROSECUTING WITNESS' BOOT.
IV. THE COURT MADE EVIDENTIARY ERRORS THROUGHOUT THE TRIAL.
V. THE COURT ERRED IN NOT PERMITTING SOME KIND OF DEMONSTRATIVE EVIDENCE OR EXPERIMENT ON THE IMPOSSIBILITY OF DEFENDANT'S DIVING INTO PASSENGER WINDOW OF KEVIN'S CAR AND IN NOT PROVIDING A JURY VIEW.
VI. THE COURT ERRED IN DENYING CERTAIN JURY INSTRUCTIONS.
VII. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN LAWS OF GRAVITY AND OF COMMON SENSE ARE APPLIED.
VIII. THE TRIAL WAS UNFAIR AND DENIED DEFENDANT DUE PROCESS AND EQUAL PROTECTION.
 {¶ 2} At the trial, the first person to testify was the victim, Melanie Burton. She stated that on December 25, 2004, she went to Hot Shots Billiards with her friend, Kevin Stockdale, to play pool, arriving at approximately 10:00 to 10:30 p.m. Appellant and his friend, Flavio Pinheiro, were playing at the pool table next to them and they met for the first time. They played pool together and appellant bought everyone drinks. Melanie testified she had three alcoholic drinks during the course of the evening. (Tr. at 86.) Near the end of the evening, she could not find Kevin and went outside to look for him. She found him sitting in the driver's seat of his father's car with the door open and Kevin was not feeling well. Appellant was next to the car and it appeared he was trying to help Kevin. (Tr. at 86.) She realized Kevin could not find his keys so she reentered the bar to ask Flavio if he had seen them. He told her appellant had the keys. When she went back outside, Kevin and appellant were arguing over to whom the keys belonged. She believed appellant was very drunk because he was not responding to reason, he was very argumentative, he was stumbling and had slurred speech. (Tr. at 88.) Finally, appellant put the keys in the ignition.
 {¶ 3} Melanie stated that Flavio came over to the car and he and appellant walked away. She and Kevin were discussing if they were too impaired to drive, when appellant came back and was pounding on the passenger-side window. Kevin slightly opened the window and appellant put his hand inside the window. Appellant threatened to call the police. Kevin could not move the car because a black SUV was behind him. After the SUV moved, Kevin moved to the backseat and Melanie moved to the driver's seat and started to back up. Appellant opened the window completely and dove into the car. After appellant sat upright, Melanie pushed him out of the car. She stepped outside to close the passenger door and appellant hit her, with a closed fist in her right eye. (Tr. at 99.) Both she and appellant fell. He started to crawl towards her and she kicked him in the face. Kevin helped her get back into the car and she passed out. When she regained consciousness, the paramedics were there.
 {¶ 4} Kevin testified after Melanie. His testimony was substantially similar to Melanie's testimony. Kevin believed appellant was drunk because his speech was slurred. Kevin stated that after appellant came back to the car and had his hand inside the window, appellant was becoming belligerent and was yelling and at that point, Kevin did not want Melanie in the passenger seat so he moved into the backseat and she moved into the driver's seat. Appellant dropped his phone inside the car and Melanie threw it outside the window. After appellant dove into the car, both Kevin and Melanie tried to push him out. Melanie stepped outside the car and Kevin did not see appellant hit her but did see him step towards her and then saw her fall. (Tr. at 143.) After Melanie crawled back inside the car, she stated, "He hit me" and she was bleeding. (Tr. at 144.) Kevin called the police. Both Kevin and Melanie testified they believed Flavio was driving the SUV.
 {¶ 5} Appellant presented the testimony of Flavio. Flavio stated that he and appellant had dinner that night with their wives and decided to go to Hot Shots. He was the designated driver and drove his white Cadillac SLS. Melanie and Kevin were playing pool at the table next to them and two men from Mexico were on the other side and they all started playing together. Appellant bought everyone drinks. One guy asked Flavio if he wanted to "smoke weed," but Flavio refused. (Tr. at 205.) Immediately afterwards, Melanie, Kevin and the guys went outside and returned approximately twenty minutes after. After a telephone call from his wife, he decided to go home and went outside and waited in the car for appellant, who was paying the bill. Appellant was talking to Kevin and Flavio took his coat over to him. Flavio then continued to wait in the car and talk to his wife on the telephone. After approximately five minutes, appellant returned and had a scratch on his face. Flavio drove them to his house and appellant discovered he had lost his cell phone and they went back to look for it but could not find it.
 {¶ 6} Appellant also testified and his testimony was similar to Flavio's testimony. They went to Hot Shots at approximately 8:30 or 9:00 p.m., to play pool. Melanie was kissing the men. Appellant bought two rounds of tequila. At the end of the evening, Flavio went outside and appellant paid the bill. Appellant went outside to talk to Kevin and told him Flavio would drive Kevin and Melanie home because Kevin and Melanie were too drunk to drive. Melanie got in the passenger seat and one of the men from Mexico was on the passenger side of the car. Eventually the man from Mexico went to his car, which was the dark SUV. Appellant tried to grab Kevin's keys several times and Melanie reached over and grabbed his hands holding them against the car. The car started moving and appellant was afraid he would slip on the ice and get hit by the car. He was able to get his phone but he dropped it. Melanie scratched his face. He managed to free himself and he went back to Flavio's car and they left.
 {¶ 7} In the first assignment of error, appellant contends that the trial court erred by not substituting the alternate juror and/or granting a mistrial when one of the jurors committed unintentional misconduct by admitting after testimony that she knew one of the witnesses. After Kevin testified, one of the jurors told the trial court that Kevin was one of her former students, six or seven years ago but she did not recognize his name and did not remember him until he testified. The trial court examined the juror and determined that she could appropriately discharge her duty to impartially deliberate. The juror testified as follows:
THE COURT: Without going into any detail, based upon your knowledge or familiarity with this witness, do you think this would cause you not to be impartial or unable to be a fair juror in this case?
JUROR: Honestly, I don't know. He was a former student of mine. And I apologize, I didn't even realize it till he walked in. I mean, it was like six or seven years ago.
THE COURT: That's fine.
JUROR: I mean, I think I could be, but I'm kind of afraid. I don't want that to affect my judgment.
THE COURT: Okay. Do you think it would affect your judgment?
JUROR: I don't think so. I mean, I don't think so at this time —
THE COURT: Okay.
JUROR: — you know, just — based on just listening. But you know, I just wanted to make you aware of that, I know him.
THE COURT: Okay. And you promise to listen to all the evidence put out by both sides?
JUROR: Sure.
THE COURT: And you promise to listen to the law as I instruct you?
JUROR: Uh-huh.
THE COURT: And apply the law to the facts that you have heard in this case; is that correct?
JUROR: Yes.
THE COURT: And you know how to weigh the credibility of testimony?
JUROR: Uh-huh.
THE COURT: And I'll advise you again at the close of evidence how to do that, correct?
JUROR: Uh-huh.
THE COURT: So based upon that, do you still think you can sit on this jury so that the State and Mr. Orlandi feel that you are a fair and impartial juror?
JUROR: I believe I could —
THE COURT: Okay.
JUROR: — you know, but like I said, I wanted you to know.
THE COURT: Okay. Thank you.
(Tr. at 162-163.)
 {¶ 8} The decision to disqualify a juror for bias is a discretionary function of the trial court. Berk v. Matthews
(1990), 53 Ohio St.3d 161, 168. In order to find that the trial court abused its discretion, we must find more than an error of law or judgment; an abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219. Most instances of an abuse of discretion result in decisions that are unreasonable as opposed to arbitrary and capricious. AAAA Enterprises, Inc. v.River Place Community Urban Redevelopment Corp. (1990),50 Ohio St.3d 157. A decision that is unreasonable is one that has no sound reasoning process to support it. When applying this standard of review, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med.Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 9} Appellant argued that the juror should have been removed for cause. Crim.R. 24(C)(9) provides the standard for when a juror may be challenged for cause, as follows:
That the juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.
 {¶ 10} While initially expressing some doubt, after discussion with the trial court, the juror stated that she could be fair and impartial. The trial court was satisfied from the examination that the juror would render an impartial verdict and there was no enmity or bias shown, therefore, the juror did not meet the criteria to be removed for cause.
 {¶ 11} After the trial court denied the request to remove the juror for cause, defense counsel moved for a mistrial on the grounds of unintentional juror misconduct. The trial court denied the motion. The decision to grant or deny a motion for mistrial lies within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. State v. Garner
(1995), 74 Ohio St.3d 49, 59, citing State v. Glover (1988),35 Ohio St.3d 18. "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected; this determination is made at the discretion of the trial court." State v. Reynolds (1988),49 Ohio App.3d 27, 33. The granting of a mistrial is only necessary when a fair trial is no longer possible. State v. Franklin
(1991), 62 Ohio St.3d 118, 127, citing Illinois v. Somerville
(1973), 410 U.S. 458, 462-463, 93 S.Ct. 1066. Thus, the essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely or materially affected.
 {¶ 12} In this case, the juror recognized a witness when he testified. The juror promptly informed the court. Even if this were considered misconduct, it did not materially affect the substantial rights of appellant. The trial court examined the juror and determined that the juror could be fair and impartial. The trial court did not abuse its discretion in making this determination and denying the motion for mistrial. Appellant's first assignment of error is not well-taken.
 {¶ 13} In his second assignment of error, appellant contends that the jury was not composed of his peers because it failed to include a Hispanic, a member of appellant's race, thereby denying him due process and equal protection. Appellant argues that he was entitled to having four male jurors and one Hispanic juror because he is from Brazil.
 {¶ 14} An essential component of the Sixth Amendment right to a jury trial includes the selection of a petit jury from a representative cross-section of the community. State v. Fulton
(1991), 57 Ohio St.3d 120, 123, quoting Taylor v. Louisiana
(1975), 419 U.S. 522, 528, 95 S.Ct. 692. In paragraph two of the syllabus of Fulton, the court stated, as follows:
In order to establish a violation of the fair representative cross-section of the community requirement for a petit jury array under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant must prove: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process.
 {¶ 15} In State v. Johnson (1972), 31 Ohio St.2d 106, 114, the Supreme Court of Ohio stated, as follows:
The right to trial by an impartial jury means that prospective jurors must be selected by officials without the systematic and intentional exclusion of any cognizable group. However it is not necessary that every jury contain representatives of all economic, social, religious, racial, political, and geographical groups in the community.
 {¶ 16} In State v. Wilson (1972), 30 Ohio St.2d 199, 202, the Supreme Court of Ohio stated that a proportionate number of an accused's race is not constitutionally required if the jury selection standards apply to all persons. There is no contention here that there was a systematic exclusion of the Hispanic race or male jurors.
 {¶ 17} Appellant cites Batson v. Kentucky (1986),476 U.S. 79, 106 S.Ct. 1712, for the proposition that challenges based on gender or race are prohibited. While that proposition is true, it is irrelevant to this case since no Hispanic juror was excused by either party and no Batson challenge was made. Appellant contends that he is entitled to a jury consisting of four males and one Hispanic but that contention is incorrect. Appellant's second assignment of error is not well-taken.
 {¶ 18} In his third assignment of error, appellant contends that the trial court erred by including testimony from a non-expert on the cause of the scar on defendant's face. Police Officer Glen Taylor testified that a scar on appellant's forehead was a consistent mark as made by Melanie's boots. (Tr. at 186.) Appellant objected to the testimony arguing that it required expert testimony and Officer Taylor was not an expert.
 {¶ 19} Evid.R. 701 allows the admission of opinion testimony by lay witnesses, as follows:
If the witness if not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) rationally based on the perception of the witness and; (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
 {¶ 20} Officer Taylor was a 14-year veteran with the police department and testified based upon his personal and professional experience that he believed the scar was consistent with being kicked by the heel of the boot. This testimony was rationally based on the perception of the witness and admissible as lay opinion testimony. Appellant's third assignment of error is not well-taken.
 {¶ 21} In his fourth assignment of error, appellant contends that the trial court made evidentiary errors throughout the trial. Appellant contends that the trial court erred in admitting prosecution's Exhibits 1 and 5, which were photographs of Melanie's injury. Appellant argues that Exhibit 1 was not properly authenticated. In State v. Hill (1967),12 Ohio St.2d 88, 90, the court stated that photographs are admissible as long as they are properly identified, are relevant and competent and accurate representations of the scene they purport to portray. The trial court has broad discretion in the admission or exclusion of evidence and, in the absence of an abuse of discretion which results in material prejudice to a defendant, an appellate court should be slow to reverse evidentiary rulings.Krischbaum v. Dillon (1991), 58 Ohio St.3d 58, 66. Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 22} Melanie identified Exhibit 1 as a picture of herself taken by her mother approximately 30 minutes after she arrived home on December 26, 2004. Melanie testified that the picture was a true and accurate representation. (Tr. at 103.) However, appellant argues that since Melanie testified she did not have an opportunity to look at her face until later, she could not provide authentication for the exhibit.
 {¶ 23} Melanie did testify that she saw her face later and the picture was a true and accurate representation of her face before her black eye appeared. (Tr. at 103.) Kevin testified that Exhibit 1 was a true and accurate representation of Melanie as she looked when he took her home on December 26, 2004. (Tr. at 146.) Thus, the photograph was authenticated. Appellant argues that since the photograph was printed on a computer, testimony was required to demonstrate that the image was not altered. However, given the testimony that the photograph was a true and accurate representation of Melanie's injuries, testimony that the image was not altered was not necessary.
 {¶ 24} Appellant also contends that Exhibit 5 should have been excluded because it did not show what the testimony purported it to show. Officer Taylor testified that he took the picture of Melanie on January 26, 2005, to show a scar or swelling and that the photograph was a true and accurate representation of Melanie's injuries that he viewed at that time. (Tr. at 180-181.) Appellant objected because no scar or swelling could be seen in the photograph. The trial court found the photograph spoke for itself and would be admitted. (Tr. at 195.) We find no abuse of discretion, given the jury could determine the weight to be given to the photograph.
 {¶ 25} Appellant also contends that the trial court erred in denying a continuance on the first day of trial. Appellant wanted to have an expert testify that Melanie and Kevin were guilty of committing crimes that evening such as, assault and driving while intoxicated. However, a trial court's decision to grant or deny a continuance is within the discretion of the court. State v.Jones (2001), 91 Ohio St.3d 335, 342. As previously stated, the trial court also has broad discretion in the admission or exclusion of evidence and, in the absence of an abuse of discretion which results in material prejudice to a defendant, an appellate court should be slow to reverse evidentiary rulings.Krischbaum, supra. The evidence appellant wanted to present was irrelevant to whether appellant committed an assault. Thus, since the expert testimony was determined to be irrelevant, the need for a continuance was moot because the expert would not have been permitted to testify whether a continuance was granted or not. We find no abuse of discretion because the testimony was irrelevant.
 {¶ 26} Finally, appellant contends that the trial court erred in excluding testimony from appellant regarding measurements of the passenger side window of a car similar to the one driven by Kevin. Appellant received this information from the internet and wanted to present it to demonstrate that he could not have jumped head first into the car because he was too big. However, the trial court excluded the information based on a lack of foundation.
 {¶ 27} Appellant testified that he received the information from the computer. However, he did not testify that he possessed personal knowledge regarding the measurements, and he did not testify as to the internet site from which he received the information or its accuracy or how the measurements were taken. The trial court did not abuse its discretion in excluding the testimony. Appellant's fourth assignment of error is not well-taken.
 {¶ 28} In his fifth assignment of error, appellant contends that the trial court erred in not permitting some kind of demonstrative evidence or experiment on the impossibility of defendant's diving into the passenger window of Kevin's car and in not providing a jury view. Appellant requested a jury view and wanted to establish by experiment that he could not have jumped head first into Kevin's car. The trial court denied the motion and quashed the subpoena for the car because Kevin did not own the car he was driving that night.
 {¶ 29} The determination of whether the jury should view the premises where a crime occurred lies within the sound discretion of the trial court. Calloway v. Maxwell (1965),2 Ohio St.2d 128. The trial court found that a jury view and reenactment were unnecessary and that diagrams and witness testimony were sufficient to present an image to the jury. Appellant could have submitted diagrams to demonstrate his contention that he would not fit inside the vehicle but failed to submit any with a foundation. Appellant has not demonstrated an abuse of discretion by the trial court. Appellant's fifth assignment of error is not well-taken.
 {¶ 30} In his sixth assignment of error, appellant contends that the court erred in denying certain jury instructions, including self-defense, mistaken identity, disorderly conduct as a lesser-included offense of assault and an instruction on the standard of proof.
 {¶ 31} A trial court may only instruct the jury on issues raised by the indictment and evidence. State v. Denny (Oct. 12, 1989), Franklin App. No. 89AP-329, unreported, at 8. When determining whether a trial court erred in its jury instructions, an appellate court reviews the instruction as a whole. Wozniakv. Wozniak (1993), 90 Ohio App.3d 400, 410. A trial court has broad discretion in instructing the jury. State v. Smith
(2002), Franklin App. No. 01AP-848.
 {¶ 32} A trial court is not required to instruct a jury on self-defense. If the evidence adduced at trial is legally insufficient to raise the issue of self-defense, the court is not obligated to instruct the jury regarding this claim and has discretion to completely remove it from the jury's consideration.State v. Barnd (1993), 85 Ohio App.3d 254. In this case, the trial court determined that there was no evidence of self-defense. R.C. 2901.05(A) provides that the burden of proof of affirmative defenses is upon the accused and must be proven by a preponderance of the evidence. In State v. Melchoir (1978),56 Ohio St.2d 15, at paragraph one of the syllabus, the court determined that the proper standard for determining whether a defendant has successfully raised an affirmative defense is whether the defendant has presented sufficient evidence which, if believed, would raise a question in the minds of reasonable people concerning the existence of such a claim.
 {¶ 33} "To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger." State v.Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus.
 {¶ 34} Appellant testified that he did not hit Melanie and he did not have an explanation for Melanie's injuries. He did testify that he saw one of the men from Mexico on the passenger side of the vehicle but, in his testimony there was no explanation for Melanie's injuries. The trial court did not err in refusing to give a self-defense instruction when there was no evidence of self-defense presented.
 {¶ 35} Appellant also argues that the trial court erred in refusing to give an instruction regarding mistaken identity. Appellant argued that the man from Mexico may have injured Melanie, and Melanie and Kevin were mistaken in identifying appellant. The prosecution had the burden to prove identification as an element of the offense. As such, the trial court refused to give a mistaken identity instruction because the instructions already covered identification. Where the propositions of law of the requested instructions are fully and fairly covered by the trial court in its general charge, a trial court may refuse to give requested special instructions. Rice v. Cleveland (1944),144 Ohio St. 299, 304.
 {¶ 36} Furthermore, appellant could not claim both self-defense and mistaken identity. In State v. Champion
(1924), 109 Ohio St. 281, 286-287, the Supreme Court of Ohio stated that "[s]elf-defense presumes intentional, willful use of force to repel force or escape force." Appellant cannot claim both that he intentionally committed force and that someone else committed the force. The defenses were mutually exclusive. The trial court did not err in refusing to give such an instruction.
 {¶ 37} Appellant argues that the trial court erred in refusing to give a disorderly conduct charge as a lesser-included offense of assault. In State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus, the Supreme Court of Ohio set forth when an offense may be a lesser included offense of another, as follows:
* * * (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.
 {¶ 38} However, this court has already examined the elements of these offenses and determined that disorderly conduct is not a lesser-included offense of assault. See State v. Neal (Sept. 1, 1998), Franklin App. No. 97APA12-1676. The trial court did not err in refusing to give such an instruction.
 {¶ 39} Finally, appellant raises one other contention. During closing argument, appellant's counsel stated, as follows:
* * * The State has the burden of proving beyond a reasonable doubt that there was an assault by my client upon Melanie Brunton. A reasonable doubt is a very, very, very strong standard. It is a higher standard than preponderance of the evidence. It is a higher standard than clear and convincing evidence.
(Tr. at 300-301.)
 {¶ 40} The prosecution objected to the comparisons of the standard of proof because appellant's counsel was instructing the jury regarding the law. At that point, appellant's counsel requested that the trial court instruct the jurors that beyond a reasonable doubt is a higher standard than the preponderance of the evidence standard and the clear and convincing evidence standard. (Tr. at 302.) The trial court refused to do so, finding that the other standards of proof were irrelevant and would confuse the jury. (Tr. at 302-303.) Appellant now contends that the trial court erred in refusing to so instruct the jury.
 {¶ 41} The trial court instructed the jury as to the relevant burden of proof and defined the standard. (Tr. at 323-324.) There was no need to confuse the jury by incorporating irrelevant burdens of proof. The trial court does not need to instruct the jury on irrelevant matters. The trial court did not err in refusing to give such an instruction. Appellant's sixth assignment of error is not well-taken.
 {¶ 42} In his seventh assignment of error, appellant contends that the verdict was against the manifest weight of the evidence. The test for whether a judgment is against the manifest weight of the evidence involves a limited weighing of the evidence by the court to determine whether there is sufficient, competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. State v. Conley
(Dec. 16, 1993), Franklin App. No. 93AP-387. In State v.Thompkins (1997), 78 Ohio St.3d 380, 387, the Supreme Court of Ohio described the standard of review, as follows:
* * * Weight of the evidence concerns "the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on the weighing the evidence in their minds, they shall find the greater amount ofcredible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.
(Emphasis added.) Black's [Law Dictionary (6 Ed. 1990)], at 1594.
 {¶ 43} Appellant argues that he could not have jumped into Kevin's car and landed with his head and hands near the floor and his feet near the passenger seat head rest. Appellant contends that if a person jumped into the passenger-side window, the person would land in a horizontal position on the lap of the driver in the driver's seat because the jumper's knees would not bend in the momentum.
 {¶ 44} The prosecution presented evidence that Melanie and Kevin met appellant and Flavio playing pool at Hot Shots. When they decided to leave, appellant was arguing with Kevin over Kevin's keys. Both Melanie and Kevin testified they believed appellant was drunk. Appellant was pounding on the passenger-side window and then put his hand inside the window. Both Melanie and Kevin testified that appellant dove into the car and Melanie pushed him back out of the car. Melanie testified that she stepped outside to close the passenger door and appellant hit her, with a closed fist in her right eye. (Tr. at 99.) Both she and appellant fell. He started to crawl towards her and she kicked him in the face. Kevin testified that he did not see appellant hit Melanie, but did see him step towards her and then saw her fall. (Tr. at 143.) After Melanie crawled back inside the car, she stated, "He hit me" and she was bleeding. (Tr. at 144.)
 {¶ 45} Appellant testified that he met Melanie and Kevin at Hot Shots and purchased two rounds of tequila. At the end of the evening, appellant went outside to talk to Kevin and told him Flavio would drive Kevin and Melanie home because Kevin and Melanie were too drunk to drive. Melanie got in the passenger seat and one of the men from Mexico was on the passenger side of the car. Eventually the man from Mexico went to his car, which was the dark SUV. Appellant tried to grab Kevin's keys several times and Melanie reached over and grabbed his hands. The car started moving and Melanie scratched appellant's face. He managed to free himself and he went back to Flavio's car and they left. Appellant had no explanation for Melanie's injuries. Flavio testified he was in his car talking on the telephone and did not see any of the events at Kevin's car but appellant returned with a scratch on his face.
 {¶ 46} The prosecution presented sufficient, competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. The jury found the prosecution witnesses more believable. Such determinations of credibility and the weight to be given to the evidence are for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The verdict is not against the manifest weight of the evidence and appellant's seventh assignment of error is not well-taken.
 {¶ 47} In his eighth assignment of error, appellant contends that the trial was unfair and denied him due process and equal protection. In this assignment of error, appellant reargues the previous assignments of error, including that juror misconduct required the juror be removed or a mistrial granted, that appellant should have been permitted to demonstrate by experiment that he could not have jumped headfirst into Kevin's car, that Exhibits 1 and 5 should have been excluded, and that Officer Taylor should not have been permitted to testify regarding appellant's scar. We have examined these issues and determined that the trial court did not err.
 {¶ 48} Although not expressly stated, appellant may be arguing that the cumulative effect of these alleged errors violates his right to a fair trial. In State v. Garner, supra, at 64, the Supreme Court of Ohio stated that, pursuant to the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." In Garner, the court found the doctrine inapplicable because the trial did not contain multiple instances of harmless error. In this case, we found the trial court did not err, so there can be no cumulative error.
 {¶ 49} Appellant presents one new argument in this assignment of error. During closing arguments, appellant's counsel stated that Melanie had a reason to lie because she intended to file a civil suit against appellant. (Tr. at 299.) In response, the prosecutor asked the jury to consider the evidence presented when considering who had a motive to lie. (Tr. at 320.) Although there was no objection to the closing argument, appellant now contends that the prosecutor's argument was unfair to him, accusing him of having a motive to lie.
 {¶ 50} The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial.State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. In State v.Keenan (1993), 66 Ohio St.3d 402, 406, the Supreme Court of Ohio set forth the standard for evaluating a claim of prosecutorial misconduct, as follows:
* * * The prosecutor carries into court the prestige of "the representative * * * of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest * * * is not that it shall win a case, but that justice shall be done. * * * Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." Berger v. United States
(1935), 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321.
 {¶ 51} Prosecutors are given considerable latitude during closing arguments. State v. Mauer (1984), 15 Ohio St.3d 239,269. Given that appellant did not object, that closing arguments are not evidence, and that the prosecutor's comment was in response to appellant's accusation, we find that any error by the prosecutor was not prejudicial and did not deny appellant a fair trial. Appellant's eighth assignment of error is not well-taken.
 {¶ 52} For the foregoing reasons, appellant's eight assignments of error are overruled and the judgment of the Franklin County Municipal Court is affirmed.
Judgment affirmed.
Bryant and French, JJ., concur.