JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Charles Goerndt appeals his conviction for theft and receiving stolen property. Goerndt assigns the following errors for our review:
 "I. The trial court erred in failing to declare a mistrial."
 "II. In violation of due process, the guilty verdicts on the aggravated robbery, aggravated burglary and were entered against the manifest weight of the evidence."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Goerndt's conviction. The apposite facts follow.
 {¶ 3} On January 13, 2006, the Cuyahoga County Grand Jury indicted Goerndt for theft, receiving stolen property, and possession of criminal tools. The *Page 2 
charges arose after the General Motors Parma Plant was notified by one of its suppliers that General Motors' property was being sold on the E-Bay internet auction site by someone using the screen name "Strocker117." After an investigation by General Motors' security group, "Strocker117" was identified as Goerndt, an employee of the General Motors Parma Plant. During the investigation, Goerndt sold forty carbide inserts[1] through the E-Bay internet auction site to one of the security company's investigators. When the investigator received the items, the return address listed Goerndt's name and home address on the package, which led to Goerndt's subsequent indictments.
 {¶ 4} At the arraignment, Goerndt pleaded not guilty; thereafter, numerous pre-trials were conducted. The matter proceeded to a jury trial, which commenced on August 7, 2006.
 Jury Trial {¶ 5} At the trial, the State presented the testimony of seven witnesses including, David Smith, a forensic computer investigator with Securitas Security Services. Smith testified that Securitas Security Services handles all security matters for General Motors' facilities worldwide. Smith testified that he participated in the investigation involving General Motors' property being sold on the E-bay auction site, by an individual using the screen name "Strocker 117." Smith testified *Page 3 
that his investigation specifically led to the discovery that carbide inserts manufactured exclusively for the General Motor Parma Facility were being sold by Strocker 117. Smith testified that he also downloaded and printed a list of items from the E-Bay auction site that he identified as potentially having come from the General Motors Parma Plant.
 {¶ 6} Smith testified that he participated in the online auction for carbide inserts being sold by Strocker 117. Strocker 117 accepted Smith's winning bid of $56 for forty carbide inserts and mailed them a few days later. Smith testified the carbide inserts package listed Goerndt as the return addressee, and also listed Goerndt's home address as the return address. Smith testified that he turned over the package containing the carbide inserts to his supervisor.
 {¶ 7} Steve Ochs, a senior manufacturing engineer at the General Motors Parma Plant, testified that he was directly involved in the decision to special order a certain type of carbide inserts for use exclusively at the Parma plant. Ochs testified that the carbide inserts which are used exclusively at the Parma plant are supplied by Sumitomo Electrode Corporation, and bear a unique identification number. At trial, Ochs identified the carbide inserts which Goerndt sold Smith on the E-Bay auction site as having come from the Parma Plant.
 {¶ 8} Ochs also testified that used carbide inserts are collected in specific plastic bins to be disposed of through General Motors' acid recovery system. Ochs *Page 4 
testified that because of their salvage value, used carbide inserts are never placed in the general trash.
 {¶ 9} Daniel Praschan testified that he is the labor relations manager at the General Motors Parma Plant. Praschan testified that on November 18, 2005, pursuant to National Union Agreement, he conducted a 76-A disciplinary hearing regarding the allegations against Goerndt. Praschan testified that Goerndt admitted that the E-Bay user name "Stroker 117" belonged to him. However, Goerndt claimed that he had not used it for awhile, then claimed that a computer hacker must have infiltrated his account, and also claimed that his teenage children must have used his account. Praschan testified that when he asked Goerndt how his children would have acquired General Motors' property, Goerndt explained that his son cleans out warehouses and sells what he finds on the E-Bay auction site.
 {¶ 10} Praschan testified that at the conclusion of the 76-A disciplinary hearing, he terminated Goerndt for violating General Motors' Shop Rule 33, which deals with theft or misappropriation of company property.
 {¶ 11} Detective David Milter of the Parma Police Department testified that on November 18, 2005, he executed a search warrant at Goerndt' s home. Detective Milter testified that while executing the search warrant, he discovered a substantial number of carbide inserts bearing the specific identifying number used exclusively at General Motors Parma plant. Detective Milter testified that he also discovered a box *Page 5 
containing carbide inserts that was prepared for shipment to a buyer in Elkhart, Indiana.
 {¶ 12} Detective Michael Klein of the Parma Police Department testified that he arrested Goerndt at the General Motors Parma Plant. Detective Klein testified that while Goerndt was in the Parma jail, he made telephone calls to his girlfriend and to his mother. Detective Klein testified that it is the policy of the jail to record the outgoing calls of the individuals in custody. During Detective Klein's testimony, the tape recordings were played, and Goerndt can be heard admitting that what he had done was wrong.
 {¶ 13} At trial, Goerndt presented the testimony of seven of his coworkers, who generally testified that it is not uncommon to see new and used General Motors' property discarded at the plant. All Goerndt's coworkers testified that they had never taken any General Motors' property home and had never retrieved any property from the trash.
 {¶ 14} James Isom testified that he has been a truck driver for Waste Management for thirty-five years. Isom testified that the General Motors Parma Plant is his primary stop each weekday. Isom testified that he never saw or gave Goerndt permission to take anything off the truck. Isom testified that in order for someone to take something off the truck, the truck driver would have to lower the box to the ground. Isom explained that the box is twelve feet from the ground and covered by an electronic tarp. *Page 6 
 {¶ 15} Goerndt, who was forty-six years old at the time of the trial, testified that he had worked for General Motors for twenty-seven years, and was a white collar union representative. Goerndt testified that as he was leaving work one day in either March or April of 2005, he noticed a Waste Management truck parked across the street from the plant in front of Tire King. He also noticed someone in General Motors' factory attire standing near the Waste Management truck. Goerndt testified that he needed some tires for his truck, so he decided to go over to Tire King.
 {¶ 16} Goerndt testified that by the time he arrived across the street, the General Motors' employee had driven away. Goerndt testified that he noticed a box of General Motors' property next to the Waste Management truck. Goerndt testified that he spoke to the driver of the truck, Mr. Isom, and took one box of the General Motors' property, which he intended to give to a machine class at Cuyahoga Community College.
 {¶ 17} Goerndt testified that he took the items to Cuyahoga Community College, spoke to someone in the machine shop, who indicated that the college had no use for the items. Goerndt testified that he took the box home, placed it in his garage, and later sold it on the E-Bay auction site.
 {¶ 18} At the close of all the evidence, the trial court dismissed the charge of possessing criminal tools. The jury returned guilty verdicts on the remaining charges of theft and receiving stolen property. On September 19, 2006, the trial court sentenced Goerndt to a period of five years community control sanctions. *Page 7 
 Motion for Mistrial {¶ 19} In the first assigned error, Goerndt argues the trial court erred in failing to declare a mistrial. We disagree.
 {¶ 20} The standard of review for evaluating a trial judge's decision to grant or deny a motion for a mistrial is abuse of discretion.[2] An "abuse of discretion" is more than an error of law or of judgment; rather, it implies the trial court's decision is unreasonable, arbitrary or unconscionable.[3]
 {¶ 21} A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected; this determination is made at the discretion of the trial court.[4] The granting of a mistrial is only necessary when a fair trial is no longer possible.[5] Thus, the essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely or materially affected. *Page 8 
 {¶ 22} In the instant case, Goerndt argues that Smith improperly tainted the jury when he referred to State's Exhibit 2, as possible sales of General Motors' property on the E-Bay auction site. We are not persuaded.
 {¶ 23} Following this testimony, the trial court instructed the jury as follows:
 "Ladies and gentlemen, I have determined to strike a portion of the questions and answers to those questions occurring at the end of the examination of Mr. Smith, our witness just before we took our lunch break. And there came a time when Mr. Smith was handed State's Exhibit 2 and he identified it. Identified it as something that he printed off of a website. And he previously said that he went to the website to identify items that may have come from the Parma facility. All the questions and answers after that are stricken. And they are stricken because there was a reference in one or more questions and a reference in one or more of the answers to something referred to as a quote, `sale.' And I want to be careful, ladies and gentlemen, to remind you that we, generally speaking, insist on testimony from people who have firsthand knowledge of the things that they are testifying to. So that's why you've heard me say several times here today, `I need a foundation on firsthand knowledge. I need information about firsthand knowledge.' * * * And so we have to be careful that we do not give names and labels to things but those things have to be actually proven in evidence. So that's why I am striking that testimony. You will treat it as if you have not heard it."[6]
 {¶ 24} A jury is presumed to follow instructions, including curative instructions, given to it by a trial judge.[7] Further, the record indicates that even the State's prosecuting attorney reinforced the trial court's curative instruction when Smith resumed testifying. The following exchange took place: *Page 9 
 "Q. Just step back, Mr. Smith, a little bit. I think in State's Exhibit 2, the listing there, you don't know if those are sales or not. Do you?
 A. No, I do not.
 Q. And you don't know if seller was Charles Goerndt. Do you?
 A. I do not.
 Q. And you printed them off because you thought it would help in the GM investigation?
 A. Correct."[8]
 {¶ 25} Finally, on cross-examination Goerndt was shown State Exhibit 2, and the following exchange took place:
 "Q. Do you recognize any of those printouts, sir?
 A. Yes.
 Q. What are they?
 A. They are sales on eBay.
 Q. Did you make those sales?
 A. Yes."[9]
 {¶ 26} We conclude, given the curative jury instructions provided by the trial court, Smith's subsequent testimony, and Goerndt's own admission, Goerndt has failed to show how he suffered any material prejudice by Smith's initial reference to *Page 10 
State Exhibit 2. Consequently, the trial court did not err in failing to grant a mistrial. Accordingly, we overrule the first assigned error.
 Manifest Weight {¶ 27} In the second assigned error, Goerndt argues the guilty verdicts are against the manifest weight of the evidence. We disagree.
 {¶ 28} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held in State v. Thompkins:[10]
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks, supra, at 1594.
 "* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The *Page 11 
discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 29} In the instant case, the undisputed evidence established that Goerndt sold General Motors' property on the E-Bay auction site to an undercover investigator, that a search warrant executed at Goerndt's residence uncovered more General Motors' property, and that Goerndt admitted, at trial, that he made other sales of General Motors' property on the E-Bay auction site. Nonetheless, Goerndt contends that the verdicts are against the manifest weight of the evidence because the property he sold had been discarded. We are not persuaded.
 {¶ 30} At trial, Goerndt testified that he took one box of carbide inserts from the Waste Management trash truck while it was parked across the street from the Parma plant. Goerndt also testified that he had the truck driver's permission to take the box of inserts. However, Isom, the truck driver, testified that he never saw Goerndt, nor did he give him permission to take anything off the truck. Isom also testified that the trash is kept in a box that is twelve feet from the ground and covered by an electronic tarp. In addition, Isom testified that the box would have had to be lowered to the ground for anyone to access the contents. Isom further testified that when he leaves the Parma plant, he goes directly to the landfill with the day's load.
 {¶ 31} Here, although Goerndt testified that he took one box of carbide inserts, the record reveals that a search warranted executed at his residence uncovered *Page 12 
hundreds of carbide inserts. Some of the carbide inserts boxes were unopened, and many bore the serial number that was exclusive to the Parma plant. Thus, it was reasonable for the jury to believe that Goerndt did not acquire these items from the Waste Management trash truck.
 {¶ 32} In addition, Ochs, the senior manufacturing engineer, testified that because of their salvage values, used carbide inserts are never placed in the general trash. Ochs testified that the used carbide inserts are placed in plastic bins and disposed of through the acid recovery system or resold to the suppliers. Ochs also testified that it is General Motors' policy that no property, including scrap, is to be removed from the plant. Ochs testified that this policy is to prevent employees from intentionally scrapping an item and then later retrieving it for their personal use.
 {¶ 33} After reviewing the entire record and upon a thorough consideration of the law and the evidence presented at trial, we find that there was substantial, competent, credible evidence upon which the jury could find Goerndt guilty of theft and receiving stolen property. Consequently, after weighing the evidence and all reasonable inferences, we conclude that the jury did not lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Accordingly, we overrule the second assigned error.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 13 
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and MELODY J. STEWART, J., CONCUR
[1] Carbide inserts are small tools made of carbide and used to cut metal.
[2] State v. Orlandi, 10th Dist. No. 05AP-917,2006-Ohio-6039. See also City of Cleveland v. Gonzalez, Cuyahoga App. No. 85070, 2005-Ohio-4413; State v. Garner (1995), 74 Ohio St.3d 49, 59,1995-Ohio-168; State v. Glover (1988), 35 Ohio St.3d 18.
[3] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[4] State v. Reynolds (1988), 49 Ohio App.3d 27, 33.
[5] State v. Franklin (1991), 62 Ohio St.3d 118, 127, citingIllinois v. Somerville (1973), 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425.
[6] Tr. at 222-223.
[7] State v. Elko, Cuyahoga App. No. 83641, 2004-Ohio-5209. See, also,State v. Hardwick, Cuyahoga App. No. 79701, 2002-Ohio-496.
[8] Tr. at 223.
[9] Tr. at 902.
[10] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52. *Page 1