[Cite as *State v. Wallace*, 2017-Ohio-7322.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105123**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# LAWRENCE J. WALLACE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-601805-A

**BEFORE:** Keough, A.J., Boyle, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 24, 2017

**ATTORNEY FOR APPELLANT**

Mary Elaine Hall
245 Leader Building
526 Superior Avenue
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Jeffrey Schnatter
        Melissa Riley
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, A.J.:

{¶1} Defendant-appellant, Lawrence J. Wallace ("Wallace"), appeals from the trial court's judgment, rendered after a jury verdict, finding him guilty of unlawful sexual conduct with a minor, sentencing him to one year incarceration, and determining he is a Tier II sexual offender. Wallace contends that he was denied his constitutional right to effective assistance of counsel when counsel failed to exercise a peremptory challenge and allowed a biased juror to be seated on the jury. Finding no merit to the appeal, we affirm.

I.      Background

{¶2} Wallace was indicted in a multicount indictment as follows: Count 1, rape (vaginal intercourse) in violation of R.C. 2907.02(A); Count 2, rape by force (cunnilingus) in violation of R.C. 2907.02(A)(2); Count 3, rape by force (digital penetration) in violation of R.C. 2907.02(A)(2); Count 4, gross sexual imposition (touching the victim's breast) in violation of R.C. 2907.05(A)(1); Count 5, gross sexual imposition (touching the victim's thighs) in violation of R.C. 2907.05(A)(1); Count 6, unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), with a furthermore specification that the victim was at least 13 years old but younger than 16, and that Wallace was ten or more years older than the victim at the time of the offense; and Count 7, kidnapping in violation of R.C. 2905.01(A)(4). The charges arose out of incident involving Wallace and his 14-year-old goddaughter.

**{¶3}** During voir dire, Juror No. 13 revealed that she was a police officer for the city of Cleveland police department but stated that she believed she could be a juror because "I know how to be impartial and how to, you know, give people fair judgment." She further revealed that two years earlier, she had been the victim of kidnap and rape by her ex-husband, who pleaded guilty to domestic violence as a result of the incident. She stated that her experience would not cause her to be biased against Wallace, however, despite the rape allegations in this case. The prosecutor asked her:

> PROSECUTOR: Okay. How do you think that will affect you, hearing from a victim, her saying she's a victim of a rape?
>
> JUROR NO. 13: I don't — I know that it will not affect me to be biased. And the reason I say that is because it wasn't until I was explaining to the police officer and the detective that came out that they put the title "rape" on it.
>
> I just — sometimes when we think of rape, we just think of someone laying down and penetrating themselves into you, but there's so many other, you know, surrounding things of rape.
>
> In my situation, it was him sticking his finger in me, and it wasn't, like, a full-blown. It was — the fact that he touched me there and it penetrated even this much, it was technically rape. So I'm not even — I guess I'm not hurt by it or bothered by it as much as, I guess, people think I should be.
>
> I just don't like to talk about it in front of a lot of people because I don't want them to think that, oh, she's weak, or that happened to her, or, oh, my God. I don't like that because I'm much stronger from this.
>
> * * *
>
> PROSECUTOR: Okay. And listening to somebody talk about a sexual assault, that's not going to cause you to go back into those — like, you'd be able to focus on what this young lady is saying, not bringing back memories?

JUROR NO. 13: Yes. Absolutely.

Defense counsel then questioned Juror No. 13:

DEFENSE COUNSEL: Thank you. You heard, [Juror No. 13], you heard the allegations in this case, and one of the rape charges is digital penetration. And when you hear those facts, to echo what the prosecutor said, that won't affect your ability to be fair and impartial at all?

JUROR NO. 13: No, it will not affect me.

(Tr. 165-170.) After the voir dire was complete, three jurors were excused for cause at the suggestion of the prosecutor and defense counsel, and Juror No. 13 became Juror No. 3 (hereafter referred to as Juror No. 3). The prosecutor and defense counsel then each used all of their peremptory challenges on remaining jurors. Defense counsel did not use a peremptory challenge on Juror No. 3.

{¶4} The jury subsequently found Wallace guilty of Count 6, unlawful sexual conduct with a minor with the furthermore specification, and acquitted him of all other charges. The court sentenced him to one year in prison and ordered him to register as a Tier II sexual offender. This appeal followed.

## II.    Law and Analysis

{¶5} In his single assignment of error, Wallace contends that his trial counsel was ineffective for not using a peremptory challenge to excuse Juror No. 3, a rape victim, from being impaneled as a jury member, and that counsel's ineffectiveness prejudiced his right to have an impartial jury decide his case.

{¶6} To establish constitutionally ineffective assistance of counsel, a defendant must demonstrate (1) deficient performance by counsel, i.e., that counsel's performance

fell below an objective standard of reasonable representation; and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113. When performing a *Strickland* analysis, courts "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 151, quoting *Strickland* at 689.

{¶7} Generally, jury selection falls within the realm of trial strategy and tactics. *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 63; *State v. Keith*, 79 Ohio St.3d 514, 684 N.E.2d 47 (1997). Thus, the Ohio Supreme Court has recognized that because "decisions about voir dire are highly subjective and prone to individual attorney strategy," *Mammone* at ¶ 153, reviewing courts should not second-guess trial counsel's voir dire strategy nor impose "'"hindsight views"'" about how counsel might have voir-dired the jury differently. *Mundt* at ¶ 63, quoting *State v. Mason*, 82 Ohio St.3d 144, 157, 694 N.E.2d 932 (1998). As the Ohio Supreme Court explained in *Mundt* at ¶ 64:

> "Few decisions at trial are as subjective or prone to individual attorney strategy as juror voir dire, where decisions are often made on the basis of intangible factors." *Miller v. Francis* (C.A.6, 2001), 269 F.3d 609, 620. "The selection of a jury is inevitably a call upon experience and intuition. The trial lawyer must draw upon his own insights and empathetic abilities. Written records give us only shadows for measuring the quality of such efforts." * * * *Romero v. Lynaugh* (C.A.5, 1989), 884 F.2d 871, 878.

{¶8} With respect to peremptory challenges, the Ohio Supreme Court has found that "'[b]ecause the use of peremptory challenges is inherently subjective and intuitive, an appellate record will rarely disclose reversible incompetence in this process.'" *Mundt* at ¶ 83, quoting *People v. Freeman*, 8 Cal.4th 450, 485, 34 Cal.Rptr.2d 558, 882 P.2d 249 (1994).

{¶9} Wallace contends that Juror No. 3 was biased against him and could not be impartial when evaluating the evidence because she had been raped two years prior to his trial, and that counsel was therefore ineffective for not removing her from the jury. He asserts that "no rape victim is qualified under the Sixth Amendment to render an impartial verdict when deliberating rape charges against a criminal defendant."

{¶10} Wallace relies upon *State v. Zerla*, 10th Dist. Franklin No. 91AP-562, 1992 Ohio App. LEXIS 1280 (Mar. 17, 1992), wherein the defendant was charged with rape and kidnapping, and the trial court overruled counsel's challenge for cause regarding a juror who had been raped three years earlier. The appeals court held that the trial court had abused its discretion in refusing to excuse the juror for cause, stating:

> Of all crimes, the crime of rape is one of the most emotionally devastating to its victims. When victims of recent sexual crimes are seated on a jury in a rape case, there is a substantial risk that they will identify themselves emotionally with the victim and against the accused. We do not mean to imply that all rape victims are presumed to be biased. But where the crime is relatively recent and the juror has not yet fully recovered from the experience, it is difficult to believe that such a juror could be objective. Under these circumstances, the juror's pledge to remain impartial and unbiased is insufficient to overcome the clear showing of bias implied from the recent and unresolved sexual attack.

*Id.* at *7.

{¶11} *Zerla* is easily distinguishable from this case, however. In *Zerla*, the juror stated that she had not yet fully recovered from her sexual assault experience. She was still receiving rape-related counseling at the time of trial, and had been arrested three times in the three years since the rape for driving while intoxicated, incidents the juror attributed to the emotional trauma she was still suffering as a result of the rape. In light of these circumstances, the appellate court found that despite the juror's assurances that she could put the experience behind her and decide the case fairly upon its merits, the trial court abused its discretion in not removing her for cause.

{¶12} In this case, unlike *Zerla*, Juror No. 3 never gave any indication that she was still suffering any emotional trauma as a result of the incident with her ex-husband. In fact, Juror No. 3 did not even consider herself to be a rape victim; she explained that what happened was "technically rape" because her ex-husband inserted his finger inside her, but she was "not bothered by it" as much as people might expect her to be. She stated further that as her ex-husband's criminal case proceeded, she "started to heal and pray on it and look and say, you know what, take care of yourself and, you know, he did something — he's a good person, but he made a terrible decision." In light of these circumstances, Juror No. 3's statement that she would be able to remain impartial, despite her past experience, was credible.

{¶13} This case is more like *State v. Mundy*, 99 Ohio App.3d 275, 650 N.E.2d 502 (2d Dist.1994), in which the defendant, who was convicted of 12 counts of gross sexual imposition for having sexual contact with his three minor grandchildren, argued that the

trial court erred in denying his challenge for cause to two prospective jurors who indicated during voir dire that they had been the victims of sexual abuse as children by family members. Based upon their demeanor and answers to questions, the trial court determined the jurors could be fair and impartial, and overruled the challenge for cause. The Second District affirmed on appeal, finding that unlike *Zerla*, the sexual assault was not recent, and that at the time of trial, the jurors were not receiving counseling related to the sexual assault or "still actively engaged in the process of recovering from their experience." *Id.* at 298.

{¶14} Here, as in *Mundy*, Juror No. 3 was not still actively recovering from her experience with her ex-husband. In fact, she stated that she had healed from the experience and did not hold any animosity toward her ex-husband. Unlike *Zerla*, there is nothing in the record demonstrating a "substantial risk" that Juror No. 3 would identify herself emotionally with the victim and against the defendant. *Zerla*, 10th Dist. Franklin No. 91AP-562, 1992 Ohio App. LEXIS 1280 at *7.

{¶15} Furthermore, we cannot adopt Wallace's contention that no rape victim can ever serve on a jury in a case where the defendant is charged with rape. As the Tenth District recognized in *Zerla*, not all rape victims are presumed to be biased. *Id.* Rather, a juror should not serve "if, under the circumstances, the juror cannot realistically be considered impartial and indifferent." *Id.*; *see also* R.C. 2313.17(B)(9) (good cause exists to challenge a prospective juror when "the person discloses by the person's answers

that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court.")

{¶16} The use of peremptory challenges is a matter of strategy that, even if debatable, does not constitute ineffective assistance of counsel. *State v. McNeill*, 83 Ohio St.3d 438, 439, 700 N.E.2d 596 (1998). Here, counsel's decision to not dismiss Juror No. 3 with a peremptory challenge was not debatable strategy; it was a legitimate tactical decision. Because Juror No. 3 indicated that she could be fair and impartial in deciding the case, despite her past experience, and there was no evidence to the contrary, counsel's decision to leave her on the jury allowed him to use all of his peremptory challenges to dismiss other prospective jurors, presumably because he felt they could not adequately consider Wallace's case.

{¶17} Moreover, even if counsel's performance were deficient, Wallace cannot establish prejudice under *Strickland* because he cannot establish a reasonable probability that the result of the trial would have been different had Juror No. 3 been excused. Instead, he can only speculate that the jury would have returned a not guilty verdict on the single count he was convicted on — unlawful sexual conduct with a minor — if Juror No. 3 had been excused. Speculation, however, is insufficient to demonstrate the prejudice component of an ineffective assistance of counsel claim. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 86; *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22.

**{¶18}** Furthermore, to establish the prejudice element when a defendant alleges ineffective assistance of counsel due to trial counsel's failure to excuse a biased juror, "the defendant 'must show that the juror was actually biased against him.'" *Mundt*, 115 Ohio St.3d 514, 2007-Ohio-4836 at ¶ 65, quoting *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir.2001). As discussed above, although Wallace claims Juror No. 3 was biased, the record does not support that claim. Accordingly, he has not established that he suffered prejudice because his counsel allowed Juror No. 3 to be seated as a juror. Therefore, we find no ineffective assistance of counsel and overrule the assignment of error.

**{¶19}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
PATRICIA ANN BLACKMON, J., CONCUR