[Cite as *State v. Dennis* , 2018-Ohio-2723.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104742**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**REECO DENNIS**

DEFENDANT-APPELLANT

━━━━━━━━━━━━━━━━━━

**JUDGMENT:**
APPLICATION DENIED

━━━━━━━━━━━━━━━━━━

Cuyahoga County Court of Common Pleas
Case No. CR-16-604113-A
Application for Reopening
Motion No. 510216

**RELEASE DATE:**　July 6, 2018

**FOR APPELLANT**

Reeco Dennis, pro se
Inmate No. A680469
Richland Correctional Institution
1001 Olivesburg Road
Mansfield, Ohio   44901


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:   Anthony T. Miranda
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

SEAN C. GALLAGHER, J.:

{¶1} On September 8, 2017, the applicant, Reeco Dennis, pursuant to App.R. 26(B), applied to reopen this court's judgment in *State v. Dennis,* 8th Dist. Cuyahoga No. 104742, 2017-Ohio-4437, in which this court affirmed his convictions and sentences for rape and kidnapping. Dennis now asserts that his appellate counsel should have argued (1) that he was denied his Sixth Amendment right to a fair trial and impartial jury because two jurors had been victims of sexual assault and, thus, were biased against him; and (2) that his trial counsel was ineffective for not moving to strike those two jurors. The state of Ohio filed its brief in opposition on September 25, 2017, and Dennis filed a reply brief on October 11, 2017. For the following reasons, this court denies the application to reopen.

{¶2} On March 12, 1996, the victim, a 17-year-old woman, was walking to a store to get milk for her baby, when the assailant pointed a gun at her and told her to go into a nearby field. Once there, the assailant, holding the gun to the young woman's head, ordered her to pull her pants down and then raped her. After he left, the young woman reported the rape and went to a hospital. She did not know the assailant and never identified him. However, the hospital took her clothes and prepared a rape kit.

{¶3} In February 2016, the state matched the DNA profile in two samples from the victim's pants to Dennis. The waistband sample identified Dennis as the contributor to a near certainty. The sample from the pant cuff was not as definitive but matched Dennis as a potential contributor.

{¶4} The grand jury indicted Dennis within the statute of limitations. A jury convicted him of rape and kidnapping, and the judge sentenced him to a total of 19 years.

{¶5} On appeal, counsel argued the following: (1) the trial court erred in admitting the young woman's medical records because they were irrelevant; (2) the trial court erred in not instructing on the lesser included offense of gross sexual imposition; (3) the convictions were not supported by sufficient evidence; (4) the convictions were against the manifest weight of the evidence;[1] (5) the trial court erred by not ruling on Dennis's motion for independent forensic testing; (6) trial counsel was ineffective for not moving to dismiss for preindictment delay and for not requesting a ruling on the motion for independent forensic testing; (7) the trial court erred in not merging rape and kidnapping as allied offenses; and (8) the sentence was contrary to law, and the record did not support the imposition of consecutive sentences.

{¶6} Now, Dennis maintains that his appellate counsel was ineffective. He asserts that counsel should have argued that Dennis was denied his right to a fair and impartial jury because two jurors had been victims of sexual assault and should not have been allowed to serve on his jury. Alternatively, he argues that his appellate counsel should have also argued that his trial counsel was ineffective for not objecting to these two jurors.

{¶7} In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.

{¶8} In *Strickland,* the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a

---

[1]The sufficiency and manifest weight arguments focused on the irregularities, incredibility, and reliability of the DNA testing.

defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶9} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.

{¶10} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's

performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.

{¶11} During voir dire, when the judge asked Juror No. 13[2] if she or someone she knew had been a victim of crime, she replied:

> Had a great aunt who was raped probably 30 years ago. I work with some clients that have been victims and perpetrators of sexual abuse. And I had an incident, we didn't press any charges, but when I was 13 with a neighbor.
>
> The Court: The aunt, was that a stranger or somebody known to her?
>
> Juror No. 13: They knew her. It was gang related.
>
> The Court: Okay. Thank you. Is there anything else in your background, * * * , we should know?
>
> Juror No. 13: No. (Tr. 78-79.)

{¶12} The judge at that time did not ask Juror No. 13 if she could be fair and impartial. Subsequently, when the prosecutor asked if there was anything else, Juror No. 13 answered:

> I had my car broken into and my best friend's car was broken into.
>
> Mr. Henry: Did they find the people responsible?
>
> Juror No. 13: No.
> .
> Mr. Henry: And how do you feel about that?
>
> Juror No. 13: Well, with mine, I didn't call the police, but I should have. That was my fault. With her, it was in the Toledo area.
>
> Mr. Henry: Can you [be] fair and impartial despite what happened to you?
>
> Juror No. 13: Yes. (Tr. 118.)

{¶13} When the judge continued the voir dire with Juror No. 14,[3] the following exchange occurred:

---

[2]Juror No. 13 became Juror No. 7 and heard the case.

The Court: And then the sexual assault question.

Juror No. 14: That was myself, and that was about 40 years ago.

The Court: Okay. Did they catch the perpetrator?

Juror No. 14: It was somebody I knew, and I never pushed it.

The Court: Okay. Same question: Are you able to sit and judge Mr. Dennis fairly and impartially.

Juror No. 14: I think so. (Tr. 82-83.)

**{¶14}** Subsequently, while the prosecutor was questioning Juror No. 14, she revealed that her daughter had some trouble with her neighbors, who tried to break into her apartment, and that her parents' house was broken into and had property stolen. The prosecutor then asked:

Mr. Henry: And despite all these things happening to you, can you be fair and impartial to both the State and Mr. Dennis?

Juror No. 14: I can. (Tr. 119.)

**{¶15}** When the defense counsel continued voir dire, he had the following exchange with Juror No. 14:

Mr. Heffernan: * * * You mentioned that you've had a difficult experience in the past.

Juror No. 14: Yes.

Mr. Heffernan: And if you served on this jury, do you believe that that would color your opinion of Mr. Dennis as he sits here today?

Juror No. 14: No.

Mr. Heffernan: Not at all?

Juror No. 14: No, because he's not the person.

Mr. Heffernan: Right.

Juror No. 14: They did not — you know, I mean, he's innocent until proven guilty so —.

---

[3]Juror No. 14 became Juror No. 8 and heard the case.

Mr. Heffernan: Right. As he sits here today, as you mentioned, he sits here an innocent man, correct?

Juror No. 14: Yes.

Mr. Heffernan: Unless and until a jury says otherwise, right?

Juror No. 14: Right. (Tr. 164-165.)

{¶16} Defense counsel then asked the entire jury whether there was anyone who felt that "based on their own personal experiences they just can't give Mr. Dennis a fair shake just by virtue of the fact that he's sitting in the defendant's chair?" (Tr. 165.) There were no hands showing a potential juror who felt that he or she could not be fair because of their personal experiences.

{¶17} When the judge asked for challenges for cause and for peremptory challenges, the prosecutor asked for removal of Juror No. 10, because her son had been a defendant in a sexual assault case and felt that the son had not been fairly treated. The court granted the removal for cause. Defense counsel asked for a similar strike for cause, and the judge granted the request and noted the appropriateness of the challenge. The state exercised three of its four peremptory challenges, and the defense only exercised two.

{¶18} Dennis argues that because rape is one of the most emotionally devastating crimes, if such victims are seated on a jury, there is a substantial risk that they will identify emotionally with the victim and against the accused. *State v. Zerla,* 10th Dist. Franklin No. 91AP-562, 1992 Ohio App. LEXIS 1280 (Mar. 17, 1992). Because of the likelihood of this possibility, the courts should presume such a bias. *United States ex rel. Hunley v. Godinez,* 758 F.Supp. 522 (N.D.Ill. 1992). To ensure an impartial jury, doubts regarding bias must be resolved against the juror. *United States v. Gonzalez,* 214 F.3d 1109 (9th Cir.2000). The impaneling of a biased

juror warrants a new trial; the presence of a biased juror cannot be harmless. *Id.* and *Hughes v. United States,* 258 F.3d 453 (6th Cir. 2001).

{¶19} Dennis argues that because Juror Nos. 13 and 14 had been victims of sexual assault, they were necessarily biased against him and deprived him of his right to an impartial jury. The trial court erred in not removing them for cause. Trial counsel prejudiced him for not trying to remove them for cause or exercising peremptory challenges to remove them. Appellate counsel was deficient in failing to argue these points. Accordingly, he concludes that the application should be granted.

{¶20} Crim.R. 24(C)(9) provides that a juror may be challenged for cause if the juror is possessed of a state of mind evincing enmity or bias toward a party. However, "no person summoned as a juror shall be disqualified * * * if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict * * *." In the present case, both Juror Nos. 13 and 14 affirmed that despite all of what had happened to them, that they could be fair and impartial. When Juror No. 13 was asked if she could be fair and impartial, she answered with an unequivocal "Yes." Juror No. 14 professed the same several times. Such answers counter a challenge for cause. *State v. Swift,* 9th Dist. Summit No. 27084, 2014-Ohio-4041.

{¶21} In *State v. Wallace,* 8th Dist. Cuyahoga No. 105123, 2017-Ohio-7322, this court distinguished *Zerla*. In *Zerla*, the prospective juror still suffered emotional trauma from the sexual assault, but in *Wallace* the prospective juror showed no indication that she was still suffering emotional trauma from the incident. Therefore, this court overruled the assignment of error that trial counsel was ineffective for failing to exercise a peremptory challenge and allowing

a biased juror to be seated on the jury. So too, in the instant case, the sexual assaults on Juror Nos. 13 and 14 had happened long in the past and there was no indication of continuing trauma.

{¶22} Under Ohio law, error in the denial of a challenge of a juror for cause cannot be grounds for reversal when the defendant did not exhaust his peremptory challenges. In the present case, trial counsel exercised only two of his four peremptory challenges. This presented another hurdle for appellate counsel, in order to argue error in not striking for cause, he would probably have to argue for a change in Ohio law that peremptory challenges need not be exhausted in order to raise error in failing to excuse a juror for cause. Appellate counsel is not deficient for failing to anticipate developments in the law or failing to argue such an issue. *State v. Williams*, 74 Ohio App.3d 686, 600 N.E.2d 298 (8th Dist.1991).

{¶23} Moreover, defense counsel did not challenge either juror for cause, which waives any alleged error in regard to those jurors. Thus, appellate counsel would have had to argue this issue through the lens of plain error, which is taken with the utmost caution and only to prevent a manifest miscarriage of justice. In the instant case, the DNA evidence could be viewed as dispositive. Both Dennis and the woman agreed that neither knew the other, and there was no evidence to indicate how Dennis's DNA got on the woman's pants except through the rape incident. Therefore, establishing a manifest miscarriage of justice or showing prejudice for purposes of ineffective assistance of counsel is problematic.

{¶24} Because the jurors affirmed that they could be impartial despite what happened to them, because the incidents were in the long past, because there was no evidence of continuing trauma, because appellate counsel would have probably had to argue for a change in the law, because he would have had to argue through the lens of plain error, and because the DNA evidence was the decisive evidence in the case making it difficult to prove a manifest miscarriage

of justice or to show prejudice, appellate counsel in the exercise of professional judgment could

have properly rejected the proposed assignment of error on juror impartiality.

{¶25} Accordingly, this court denies the application to reopen.

———————

SEAN C. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., and
LARRY A. JONES, SR., J., CONCUR