**[Cite as *State v. T.L.*, 2020-Ohio-3430.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

       Plaintiff-Appellee,                  :

                                      No. 19AP-196
v.                                               :        (C.P.C. No. 17CR-6522)

[T.L.],                                          :        (REGULAR CALENDAR)

       Defendant-Appellant.               :

---

D E C I S I O N

Rendered on June 23, 2020

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.  **Argued:** *Steven L. Taylor*.

**On brief:** *The Law Office of W. Joseph Edwards*, and *W. Joseph Edwards,* for appellant.  **Argued:** *W. Joseph Edwards*.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, T.L., appeals from the judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to jury verdicts finding him guilty of gross sexual imposition and rape.  For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} Appellant was indicted on two counts of gross sexual imposition, third-degree felony offenses in violation of R.C. 2907.05, and four counts of rape, first-degree felony offenses in violation of R.C. 2907.02.  The indictment alleged appellant committed gross sexual imposition by having sexual contact with the victim, W.L., when she was less than 13 years of age, and committed rape by having sexual intercourse with W.L., when he

compelled her to submit by force or threat of force.  A jury trial was conducted on the charges in February 2019.

{¶ 3}    W.L. testified she was born in China and came to the United States at age 10, to live with her aunt and appellant, who was married to her aunt at the time.  Appellant had permanent residency in the United States and was appointed as W.L.'s legal guardian.  W.L. testified that when she was 11 years old, appellant first touched her breasts over her clothing in the apartment where they lived.  Appellant touched her breasts again on subsequent occasions and later progressed to touching her pubic area under her clothing.  Appellant told W.L. not to tell her aunt or anyone else about these incidents.  W.L. testified she tried to avoid appellant by staying close to her aunt and cousins, and did not tell anyone about appellant touching her.  W.L. stated appellant touched her breasts and pubic area many times, including times when she was showering.  During some of these incidents, appellant would also touch W.L.'s breasts and pubic area with his tongue.  When she was 15 years old, appellant brought W.L. home from school one day and took her to the living room of the house where they lived.  He pushed her to the floor and ordered her to remove her clothes.  Appellant removed his pants and forced intercourse with her.  W.L. testified appellant forced intercourse with her multiple times during the subsequent years.

{¶ 4}    W.L. testified that when she was 14 years old, appellant told her there was a medical condition with her vagina that could only be cured by having a sexual relationship.  Appellant told her he had spoken with a doctor in New York named Feng, who advised that the alleged condition should be treated by having a sexual relationship.  When W.L. was older, she unsuccessfully tried to contact this doctor using telephone numbers appellant provided.  She later received voicemails from a man identifying himself as Dr. Feng.  The caller stated that W.L. needed to have her condition treated, then have photographs taken and sent to the doctor's office.  W.L. testified appellant took photographs of her pubic area on multiple occasions and claimed he would send them to  the doctor.  Appellant also gave W.L. herbal pills that he claimed would treat her alleged medical condition.

{¶ 5}    The final time appellant forced intercourse on W.L. occurred when she was 20 years old, shortly before appellant was due to travel to China.  Although appellant had told W.L. that would be the last time, when he was in China he sent messages to W.L. indicating he would need to have intercourse with her again to treat the alleged medical condition.  W.L. decided to tell her aunt about the incidents and her aunt convinced her to

report it to police.  W.L. made a report to the Grove City Police Department in November 2017.

{¶ 6}  The prosecution also presented testimony from B. Feng, who testified he knew appellant and considered him a friend.  Feng testified appellant asked him to call a particular telephone number and pretend to be a doctor.  Appellant asked Feng to tell the recipient of the call that she was having severe health issues and urge her to be seen by a doctor.  Appellant told Feng the intended call recipient's first name, which matched W.L.'s first name.  Feng testified to the area code and last four digits of the telephone number appellant asked him to call, which matched W.L.'s cell phone number.  He called the number three times, but no one answered, and he left two voicemail messages.

{¶ 7}  Grove City Police Detective Rick Steller testified he investigated W.L.'s report, including performing a forensic investigation of appellant's cell phone.  Detective Steller testified he could only retrieve a limited amount of historic information from a cell phone.  The forensic investigation indicated that 395 calls and 26 text messages were exchanged between appellant's cell phone and Feng's cell phone during the period from November 2016 through November 2017.

{¶ 8}  Appellant called as witnesses his sister and one of his cousins.  They both testified they had interacted with appellant and his family, and that appellant did not treat W.L. differently than his own daughters. They both stated they never saw anything inappropriate between appellant and W.L.

{¶ 9}  The jury found appellant guilty on all six charges as set forth in the indictment.  The trial court subsequently conducted a sentencing hearing and imposed sentences of 30 months imprisonment on each of the gross sexual imposition convictions and 5 years imprisonment on each of the rape convictions.  The court imposed all sentences to be served consecutively, for a total term of 25 years imprisonment.  The court also notified appellant he was classified as a Tier III sexual offender, with lifetime registration duties, and that he would be subject to a mandatory period of post-release control.

## II. Assignments of Error

{¶ 10}  Appellant appeals and assigns the following four assignments of error for our review:

> I. DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL THUS DEPRIVING HIM OF SUBSTANTIAL RIGHTS UNDER STATE LAW AND HIS DUE PROCESS

RIGHTS UNDER THE OHIO AND FEDERAL CONSTITUTIONS.

II. DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL THEREBY VIOLATING HIS RIGHTS UNDER THE STATE AND FEDERAL CONSTITUTIONS.

III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO ENSURE THAT DEFENDANT-APPELLANT KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY REJECTED ANY PLEA DEAL THEREBY DEPRIVING HIM OF HIS RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS HIS DUE PROCESS RIGHTS UNDER THE STATE AND FEDERAL CONSTITUTIONS.

IV. THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. Analysis

### A. Failure to remove jurors for cause

{¶ 11} Appellant argues in his first assignment of error that the trial court denied his right to due process and a fair trial by failing to excuse certain potential jurors for cause, thereby requiring appellant to exercise peremptory challenges to remove those individuals from the jury. Appellant was accused of crimes involving sexual assault and several prospective jurors admitted to having experienced sexual assault. Appellant claims those prospective jurors were potentially biased against him due to their personal experiences of sexual assault. Appellant asserts the trial court's failure to excuse those potentially biased prospective jurors for cause forced him to use peremptory challenges to remove them from the final jury panel. Appellant argues the composition of the jury that heard his case was unfairly shaped by the trial court's action, suggesting he could have used his peremptory challenges to remove other prospective jurors if the trial court had removed for cause the prospective jurors who disclosed a history of sexual assault.

### 1. Voir dire and jury selection

{¶ 12} The prosecutor and appellant's trial counsel conducted voir dire of the prospective members of the jury. During the prosecutor's voir dire, five prospective jurors indicated they had been victims of sexual assault. These individuals were designated as

Prospective Juror 4, Prospective Juror 5, Prospective Juror 15, Prospective Juror 22, and Prospective Juror 28. Prospective Juror 4, Prospective Juror 5, and Prospective Juror 15 briefly described their experiences with sexual assault during open voir dire, while Prospective Juror 22 and Prospective Juror 28 indicated they would be willing to discuss their experiences privately with the trial court and counsel. Appellant's trial counsel expressed general concern about these five prospective jurors following the prosecutor's voir dire. The trial court noted all five prospective jurors had indicated they could remain fair and impartial notwithstanding their prior sexual assault experiences and found they had not evinced an inability to be fair and impartial to appellant or the prosecution. During her voir dire, appellant's trial counsel did not ask any specific additional questions about the sexual assault experiences of the five prospective jurors.

{¶ 13} Appellant was entitled to exercise four peremptory challenges in selecting the jury and one peremptory challenge in selecting alternate jurors. Crim.R. 24(D), (G)(1); R.C. 2945.21(A)(1). Appellant exercised his first peremptory challenge on Prospective Juror 4, without moving for her exclusion for cause, and Prospective Juror 4 was excused. Appellant moved for exclusion of Prospective Juror 5 and Prospective Juror 15 for cause, and the trial court denied those requests. Appellant then exercised his second and third peremptory challenges to excuse Prospective Juror 5 and Prospective Juror 15. Appellant used his fourth and final peremptory challenge to excuse another prospective juror. Prospective Juror 22 was seated as the second alternate juror; appellant did not challenge her for cause or use his additional peremptory challenge to remove her. Although seated as the second alternate juror, Prospective Juror 22 ultimately did not participate in the jury's deliberations or verdicts. Prospective Juror 28 was not seated as a member of the jury panel or as an alternate juror.

**2. Constitutional claim**

{¶ 14} Appellant asserts the trial court's failure to excuse potentially biased jurors violated his constitutional rights to due process and a fair trial. However, the United States Supreme Court has held that when a trial judge erroneously refuses to dismiss a potential juror for cause, "if the defendant elects to cure such an error by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right." *United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000). *See also Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) ("So

long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."); *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 86 (quoting *Ross*); *State v. Williams*, 79 Ohio St.3d 1, 4 (1997) ("[T]o establish a constitutional violation in this situation, the appellant must demonstrate that one of the jurors seated was not impartial."). In this case, appellant exercised peremptory challenges to excuse Prospective Juror 4, Prospective Juror 5, and Prospective Juror 15 from the jury. Prospective Juror 22 was seated as an alternate juror, but did not participate as part of the jury that convicted appellant, and Prospective Juror 28 was not seated as a member of the jury or alternate juror. Appellant has failed to establish any bias among the members of the jury that convicted him; thus, appellant fails to demonstrate a violation of his constitutional rights.

**3. State law claim**

{¶ 15} The Supreme Court of Ohio has held that under state law " 'where the defense exhausts its peremptory challenges before the full jury is seated, the erroneous denial of a challenge for cause in a criminal case may be prejudicial.' " *Hale* at ¶ 87, quoting *State v. Cornwell*, 86 Ohio St.3d 560, 564 (1999). *See also State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 92 (citing *Hale*); *State v. Getsy*, 84 Ohio St.3d 180, 191 (1998) ("[E]rror in the denial of a challenge of a juror for cause cannot be grounds for reversal when the defendant did not exhaust his peremptory challenges."). In this case, appellant exhausted his peremptory challenges before the full jury was seated; therefore, we must determine whether the trial court erred by refusing to remove the prospective jurors for cause.

{¶ 16} As noted above, Prospective Juror 28 was not made a member of the jury or an alternate juror. The panel of jurors and alternates was selected before reaching Prospective Juror 28, and appellant fails to demonstrate any prejudice arising from the trial court's failure to excuse Prospective Juror 28 when his trial counsel initially expressed general concern at the close of the prosecutor's voir dire. Prospective Juror 22, although seated as the second alternate juror, ultimately did not participate in the jury's deliberations or verdicts. Therefore, we confine our analysis to whether the trial court erred by failing to dismiss Prospective Juror 4, Prospective Juror 5, and Prospective Juror 15 for cause.

{¶ 17} A prospective juror in a criminal case may be challenged for cause on multiple grounds, including that he or she "is possessed of a state of mind evincing enmity or bias toward the defendant or the state" or "is otherwise unsuitable for any other cause to serve

as a juror." Crim.R. 24(C)(9) and (14). *See also* R.C. 2945.25(B) (providing that a juror in a criminal case may be challenged on the ground "[t]hat he is possessed of a state of mind evincing enmity or bias toward the defendant or the state"). A trial court has discretion in determining a prospective juror's ability to be impartial and its ruling will not be reversed absent an abuse of discretion. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 106. An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The trial court may rely on a prospective juror's testimony in determining that individual's impartiality, and a reviewing court must give deference to the trial court's ability to see and hear the prospective juror and the exchanges during voir dire. *State v. Mendoza*, 10th Dist. No. 16AP-893, 2017-Ohio-8977, ¶ 50.

{¶ 18} Appellant failed to challenge Prospective Juror 4 for cause before using a peremptory challenge to excuse her from the jury. Therefore, appellant has waived all but plain error review with respect to the trial court's failure to remove Prospective Juror 4 for cause. *See State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 72 (holding defendant waived objection to a particular juror by failing to challenge him for cause or exercise a peremptory challenge and applying plain error review on appeal). Plain error exists when an error is plain or obvious and affects a substantial right. *State v. Griffin*, 10th Dist. No. 10AP-902, 2011-Ohio-4250, ¶ 13. The error must constitute an obvious defect in the legal proceedings and there must be a reasonable probability that the error affected the outcome. *State v. Barrie*, 10th Dist. No. 15AP-848, 2016-Ohio-5640, ¶ 32. Accordingly, while we review the trial court's denial of the challenges for cause of Prospective Juror 5 and Prospective Juror 15 for abuse of discretion, we apply the plain error standard to the trial court's failure to remove Prospective Juror 4 for cause.

{¶ 19} During the prosecutor's voir dire, Prospective Juror 4, Prospective Juror 5, and Prospective Juror 15 discussed their sexual assault experiences. Prospective Juror 4 indicated she previously had an abusive relationship partner, who used physical, sexual, and mental abuse to control her. When asked whether this experience would prevent her from being fair and impartial in a sexual assault case, Prospective Juror 4 indicated it would not. She stated, "I've been on both sides of the spectrum with criminal and, you know, straight line, I guess you could say. So I get where people are coming from in some cases because I know everybody has different lives and different points of view that can make

them react the way they do." (Feb. 11, 2019 Tr. at 35.)  Similarly, Prospective Juror 15 indicated she had been in a controlling relationship, involving mental, physical, and sexual abuse, but asserted there was nothing about that experience that would prevent her from being fair and impartial. Prospective Juror 15 stated she would be a good juror because she "like[d] to hear both sides of everything before making decisions." (Feb. 11, 2019 Tr. at 37.) Prospective Juror 5 indicated she had been abused by a relative as an adolescent.  However, when asked whether anything about that experience would prevent her from being fair and impartial, Prospective Juror 5 stated it would not.  When asked to elaborate on why she felt she would be a good juror, Prospective Juror 5 responded, "I love mysteries, detective work, that kind of stuff. Everybody, you know, needs a chance, and I think people need to hear both sides."  (Feb. 11, 2019 Tr. at 36.)  When appellant's trial counsel expressed concern about these prospective jurors following the prosecutor's voir dire, the trial court noted they all indicated they could remain fair and impartial notwithstanding their prior experiences and found they had not evinced an inability to be fair and impartial to appellant or the prosecution.  Appellant's trial counsel did not ask any specific questions about these prospective jurors' sexual assault experiences during her voir dire.[1]

{¶ 20} When final jury selection occurred, appellant's trial counsel challenged Prospective Juror 15 for cause, based on her having been sexually assaulted and having multiple relatives connected with law enforcement.  In denying the challenge for cause, the trial court noted that while Prospective Juror 15 admitted to having been sexually assaulted she asserted she could be a fair and impartial juror despite that experience.  With respect to her relatives in law enforcement, Prospective Juror 15 stated those relationships would not dissuade her from being fair and impartial.  The trial court held there was nothing in Prospective Juror 15's statements that would evince enmity toward appellant or preclude her from being a fair and impartial juror.  Appellant's trial counsel also challenged Prospective Juror 5 for cause, based on her experience of sexual abuse by a relative.  The trial court denied the challenge because Prospective Juror 5 articulated reasons why she believed she could be a fair and impartial juror despite having been sexually assaulted.

---

[1] We note that the questionnaires completed by prospective jurors are not included in the record on appeal before this court. Therefore, we cannot evaluate any information contained within those questionnaires and how it may have influenced the trial court's decision to deny appellant's challenges for cause.

{¶ 21} This court has found an abuse of discretion where, in selecting the jury for a rape and kidnapping trial, the trial court failed to dismiss for cause a prospective juror who privately admitted to the trial court and counsel that she had been raped three years earlier. *State v. Zerla*, 10th Dist. No. 91AP-562 (Mar. 17, 1992). Although the prospective juror claimed she could put the experience behind her and decide the case fairly on its merits, this court noted on appeal that she also admitted to having been arrested three times for driving while intoxicated during the years following the rape and attributed that behavior to emotional trauma resulting from the rape. She also admitted she was still receiving rape-related counseling. Under those circumstances, this court concluded the prospective juror's pledge to remain impartial and unbiased was insufficient to overcome the implied bias resulting from her recent experience as a victim of sexual assault.

{¶ 22} Other appellate decisions have distinguished *Zerla* on its facts in cases where the prospective jurors' sexual assault experiences were more distant, and the prospective jurors did not indicate continuing trauma as a result of the experiences. *See State v. Dennis*, 8th Dist. No. 104742, 2018-Ohio-2723, ¶ 21; *State v. Wallace*, 8th Dist. No. 105123, 2017-Ohio-7322, ¶ 10-12.

{¶ 23} We recognize that sexual assault may result in continuing trauma for the victim for a very long time. We further recognize that continuing trauma may not be apparent to an outside observer. We consider this very carefully. Our concern is whether continuing trauma would prevent a juror from being fair and impartial. It is not a question of whether there is an indication of continuing trauma but, rather, whether continuing trauma prevents a juror from being fair and impartial.

{¶ 24} Unlike *Zerla*, in the present case, none of the prospective jurors indicated that continuing trauma would prevent them from being fair and impartial. Prospective Juror 4, Prospective Juror 5, and Prospective Juror 15 shared information regarding their prior experiences with sexual assault with the trial court and counsel. All four prospective jurors at issue indicated they could be fair and impartial, notwithstanding their prior experiences as victims of sexual assault. As explained above, we give deference to the trial court's ability to see and hear a prospective juror during voir dire and the effect of those observations in evaluating the prospective juror's ability to be fair and impartial. Under the circumstances presented in this case, the trial court did not act unreasonably, arbitrarily or unconsciously in denying appellant's challenges for cause of Prospective Juror 5 and

Prospective Juror 15, and we find no abuse of discretion. Similarly, we cannot conclude the trial court plainly erred by failing to remove Prospective Juror 4 for cause on its own initiative, where appellant's trial counsel failed to challenge her for cause. *See State v. Morris*, 10th Dist. No. 05AP-1139, 2009-Ohio-2396, ¶ 16-20 (holding that where prospective juror stated he did not agree with self-defense or the use of guns, but was willing to follow the law as instructed by the court and saw no reason he could not be fair to both sides, trial court did not abuse its discretion by denying challenge for cause); *State v. Orlandi*, 10th Dist. No. 05AP-917, 2006-Ohio-6039, ¶ 10 ("While initially expressing some doubt, after discussion with the trial court, the juror stated that she could be fair and impartial. The trial court was satisfied from the examination that the juror would render an impartial verdict and there was no enmity or bias shown, therefore, the juror did not meet the criteria to be removed for cause.").

{¶ 25} Although appellant does not expressly reach this far in his arguments on appeal, we note that his reasoning suggests a per se rule excluding victims of sexual assault from serving as jurors in cases involving sexual assault. We do not find such a rule to be supported by Ohio law. Even in *Zerla*, this court declined to adopt such a categorical rule. *See Zerla* ("We do not mean to imply that all rape victims are presumed to be biased."). We further note that courts in other states have declined to adopt similar categorical juror exclusions in sexual assault cases. *See, e.g., State v. Erickson*, 227 Wis.2d 758, 777 (1999) ("Likewise, we find no merit to Erickson's second assertion that because of Juror L's own sexual assault, a reasonable person in her position could not be fair and impartial. Erickson's assertion comes close to arguing that any victim of sexual assault, at least if the assault occurred while the victim was a child, must be categorically excluded from serving on his jury. We have been 'repeatedly reluctant to exclude groups of persons from serving as petit jurors as a matter of law.' " (Internal citation omitted.)); *Vay v. Commonwealth*, 67 Va.App. 236, 262 (2017) ("Although disclaiming that he is seeking such a rule, appellant essentially asks us to find that a person affiliated with women and gender studies in a university setting can never fairly sit as a juror in a sexual assault case in which the defendant is a male. Nothing in Virginia law supports such a *per se* disqualification rule, and we decline to adopt such a rule here."). We believe trial courts can effectively exercise their discretion on a case-by-case basis to evaluate any implicit bias arising from a prospective juror's experience as a victim of any crime, including sexual assault.

**4. Summary of jury selection claims**

{¶ 26} Appellant fails to demonstrate a valid constitutional claim because he cannot establish bias among the members of the jury that ultimately found him guilty. He also fails to demonstrate a valid claim under state law because he cannot establish an abuse of discretion or plain error by the trial court in refusing to remove certain prospective jurors for cause.

{¶ 27} Accordingly, we overrule appellant's first assignment of error.

**B. Ineffective assistance of counsel in plea negotiations**

{¶ 28} Appellant argues in his second assignment of error that he was denied effective assistance of counsel during plea negotiations. Appellant claims this court can presume ineffective assistance in this case because the record is devoid of evidence regarding the state's plea offer to appellant. Appellant asserts that due to the fact he did not speak English, and had limited education and prior contact with the court system, his trial counsel had an affirmative duty to ensure that the terms of the state's plea offer were placed on the record by a qualified interpreter.

{¶ 29} We apply a two-part test to evaluate claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989). "First, the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland* at 687. In the context of a rejected plea offer, an individual asserting ineffective assistance must demonstrate a reasonable probability he would have accepted the plea if he had received effective assistance of counsel. *State v. Phipps*, 10th Dist. No. 14AP-545, 2015-Ohio-3042, ¶ 11, citing *Missouri v. Frye*, 566 U.S. 134, 148 (2012).

{¶ 30} The record in this case indicates there was no formal plea agreement offered to appellant. Prior to jury selection, the following exchange occurred between the trial court and counsel:

> THE COURT: So that the record is clear, it is the Court's understanding that there were conversations between counsel regarding a negotiated plea offer and potential resolution of this matter; is that correct, Ms. Rausch?
>
> MS. RAUSCH [prosecutor]: Yes, Your Honor.

> THE COURT: And it is my understanding through conversations with counsel on both sides that there is no negotiated plea offer; is that correct?
>
> MS. RAUSCH: That is correct, Your Honor.
>
> THE COURT: Ms. Kaiser, is that correct?
>
> MS. KAISER [appellant's trial counsel]: That is correct, Your Honor.

(Feb. 11, 2019 Tr. at 4.)  Thus, the record indicates there were *preliminary* discussions between counsel regarding the possibility of a negotiated plea offer.  There is no indication those discussions progressed to the point that any formal plea offer was made.  Under these circumstances, where there is no evidence of any actual offer to be accepted or rejected, appellant cannot establish ineffective assistance of counsel with respect to advice about whether to accept or reject a plea offer.

{¶ 31} Moreover, we note that appellant's suggestion that this court can presume ineffective assistance of counsel in this case because appellant's trial counsel did not put on the record any details of preliminary plea discussions is contrary to our precedent. Generally, a licensed attorney in Ohio is presumed to be competent and trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance.  *State v. Jones*, 10th Dist. No. 16AP-803, 2017-Ohio-5529, ¶ 11. Further, to the extent appellant suggests his trial counsel was ineffective by failing to communicate the details of any preliminary plea discussions with him, he relies on matters outside the record and such a claim would not be appropriate on direct appeal. *See State v. Davis*, 10th Dist. No. 05AP-193, 2006-Ohio-5039, ¶ 19 ("When allegations of ineffective assistance of counsel hinge on facts not appearing in the record, the proper remedy is a petition for post-conviction relief rather than a direct appeal.").

{¶ 32} Accordingly, we overrule appellant's second assignment of error.

## C. Trial court's failure to determine appellant's understanding of plea offer

{¶ 33} Appellant claims in his third assignment of error the trial court erred by failing to ensure  he knowingly, voluntarily, and intelligently rejected any plea offer. Appellant asserts the trial court's discussion with counsel prior to jury selection was perfunctory and failed to establish that appellant understood the implications of proceeding to trial.  Appellant argues that given his limited education and language barrier,

the court should have ascertained on the record that he understood the terms of any plea offer.

{¶ 34} Appellant's trial counsel did not proffer additional details about the preliminary plea discussions and did not object to proceeding with jury selection without putting more details on the record. Thus, any asserted error by the trial court is subject to plain error review. As explained above, the record reflects that, at most, there were preliminary discussions between the prosecutor and appellant's trial counsel, and that those discussions did not advance to the stage of a negotiated plea offer. Thus, there was no offer extended to appellant and, correspondingly, no duty on the trial court to ensure appellant understood the implications of accepting or rejecting an offer. Under these circumstances, we cannot conclude the trial court committed plain error by failing to ensure on the record that appellant understood the details of any ultimately unfruitful preliminary discussions his trial counsel had with the prosecutor.

{¶ 35} Accordingly, we overrule appellant's third assignment of error.

## D. Weight of the evidence

{¶ 36} In his fourth assignment of error, appellant asserts the jury's verdicts were against the manifest weight of the evidence. Appellant recites the legal standard for review of a jury verdict as being against the manifest weight of the evidence in his brief but fails to set forth any specific argument explaining why the verdicts were against the manifest weight of the evidence. Instead, appellant requests this court review the trial transcript to determine whether the offenses were proved.

{¶ 37} "[T]he burden of affirmatively demonstrating error on appeal rests with the party asserting error." *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, ¶ 94 (10th Dist.). App.R. 12(A)(2) provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 16(A)(7) requires an appellant's brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." "It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error." *Gold* at ¶ 94. Appellant has failed to satisfy

the burden of demonstrating that the jury's verdicts were against the manifest weight of the evidence by failing to set forth any specific argument to support that claim. *See State v. Jackson*, 10th Dist. No. 14AP-670, 2015-Ohio-3322, ¶ 10-12 (overruling assignment of error challenging jury verdicts based on insufficient evidence because appellant failed to present specific argument addressing the sufficiency of the evidence); *State v. Gonzalez*, 10th Dist. No. 10AP-628, 2011-Ohio-1193, ¶ 28-29 (overruling assignment of error challenging jury verdict as being against the manifest weight of the evidence because appellant failed to present an argument in his brief).

{¶ 38} Notwithstanding appellant's failure to set forth a specific argument in support of this assignment of error, having reviewed the record, as summarized in paragraphs 2-8 supra, we find the verdicts were supported by the manifest weight of the evidence.

{¶ 39} Accordingly, we overrule appellant's fourth assignment of error.

## IV. Conclusion

{¶ 40} For the foregoing reasons, we overrule appellant's four assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*


LUPER SCHUSTER J., concurs.
BRUNNER, J., concurs in part and dissents in part.

BRUNNER, J., concurring in part and dissenting in part.

{¶ 41} I concur with the majority in its decision overruling the second, third, and fourth assignments of error, but I respectfully dissent from the majority's decision overruling the first assignment of error and, as a result, I would reverse and remand this case for a new trial. The facts of this case are extremely disturbing and this is an extremely close case on review.

{¶ 42} In my view, the trial court should have granted the defendant's motion for cause as to Prospective Juror 5, whose past experience included sexual assault by a relative, more closely factually aligned with the issues for trial, or the trial court should have pursued further questioning of the juror regarding the extent of trauma experienced and remaining, consistent with this court's holding in *State v. Zerla*, 10th Dist. No. 91AP-652, 1992 WL 55433, 1992 Ohio App. LEXIS 1280 (Mar. 17, 1992). Later caselaw from the Eighth District

Court of Appeals distinguished our holding in *Zerla* and includes reference to the gleaning of specific information, whereby, to assure a fair trial, the record is clear that trauma from an experience similar to the facts tried has been adequately treated with recovery:

> Here, as in [*State v.*] *Mundy*, [99 Ohio App.3d 275, 298 (2d Dist.1994)] Juror No. 3 was not still actively recovering from her experience with her ex-husband. In fact, *she stated that she had healed from the experience and did not hold any animosity toward her ex-husband.* Unlike *Zerla*, there is nothing in the record demonstrating a "substantial risk" that Juror No. 3 would identify herself emotionally with the victim and against the defendant. *Zerla,* 10th Dist. Franklin No. 91AP-562, 1992 Ohio App. LEXIS 1280 at *7.

(Emphasis added.) *State v. Wallace*, 8th Dist. No. 105123, 2017-Ohio-7322, ¶ 14. In further discussing *Mundy*, the Eighth District noted that "the sexual assault was not recent, and that at the time of trial, the jurors were not receiving counseling related to the sexual assault or 'still actively engaged in the process of recovering from their experience.' [*Mundy*] at 298." *Wallace* at ¶ 13. *Wallace* is not our precedent. *Zerla* is. We stated in *Zerla*:

> [W]here the facts establishing bias or interest are uncontroverted and the only conclusion that may be legally drawn is one of bias, the refusal to excuse the challenged juror constitutes an abuse of discretion warranting reversal.

(Citations omitted.) *Zerla* at *5. Moreover, the record does not provide assurance that the trial court adequately questioned this juror about the similarity of her experience with the facts at issue. We require that "the court should not blindly accept the juror's pledge that he or she will render a fair and impartial verdict." *Zerla* at *6. We also stated:

> Under the Ohio and United States Constitutions, the accused is entitled to a jury composed of impartial and unbiased jurors. *Murph* v. *Florida* (1975), 421 U.S. 794, 799; *Lingafelter* [*v. Moore*, 95 Ohio St. 384 (1917)]*,* paragraph two of the syllabus. ***For this reason, any substantial doubts with respect to a juror's impartiality must be resolved in favor of the accused.*** Whether or not the juror conscientiously believes that he or she can act impartially, the court should sustain the challenge if, under the circumstances, the juror cannot realistically be considered impartial and indifferent.

(Emphasis added.) *Zerla* at *6-7. The trial court should have inquired further of Prospective Juror 5's circumstances, which by their nature give rise to substantial doubts about her impartiality; absent questioning about these issues, the trial court should have

granted the defendant's motion for cause as to Prospective Juror 5. Its failure to do so constituted abuse of discretion.

{¶ 43} The majority makes note of the fact that appellant's trial counsel did not ask any specific questions about these prospective jurors' sexual assault experiences during their voir dire. The majority also notes the incompleteness of the record in that it lacks the juror questionnaires, which could shed light on how information contained within those questionnaires may have influenced the trial court's decision to deny appellant's challenge for cause of Prospective Juror 5.

{¶ 44} Appellant's trial counsel's decision not to ask specific questions of Prospective Juror 5, to my view, is a trial tactic. "Voir dire is largely a matter of strategy and tactics." *State v. Miller*, 12th Dist. No. CA2009-04-106, 2010-Ohio-1722, ¶ 33, citing *State v. Keith*, 79 Ohio St.3d 514, 521 (1997); *State v. Cruz*, 12th Dist. No. CA2012-03-059, 2013-Ohio-215, ¶ 40. There are a myriad of reasons why counsel would not single out this prospective juror, including concern that counsel could be viewed by the rest of the jury as not sensitive to Prospective Juror 5's circumstances. Or there may have been concern that if counsel for appellant was perceived by the jury as questioning these individuals too intensely, if another prospective juror had similar circumstances, they might not be forthcoming about them for fear of being questioned extensively about them in the presence of other potential jury members. Since the motion was for cause, the trial court could have further questioned the witness outside of the hearing of the rest of the jury, but it did not do this and, instead, required that appellant use a peremptory challenge to accomplish what appellant should have been able to accomplish by a challenge granted for cause.

{¶ 45} While the majority points out that appellant ultimately did not face a jury with the kind of bias that was the basis for his motion for cause, appellant was constrained to use all of his peremptory writs to ensure that the jury would be free from someone with a background such as Prospective Juror 5, whose experiences were uncannily close to the actions for which appellant was on trial. And because the trial court did not supply the jury questionnaires with the record, we cannot assume that appellant faced no other prejudice in the makeup of the jury once his peremptory challenges were exhausted. *See* Crim.R. 24(C)(9) and (14).

{¶ 46} Crim.R. 24(C) provides the reasons for challenging a juror for cause. "For instance, a juror may be challenged for cause if the juror is possessed of a state of mind

evincing enmity or bias toward a party. Crim.R. 24(C)(9). After listing some other reasons, including certain relationships not applicable here, the rule concludes in subsection (14) by adding the reason '[t]hat the juror is otherwise unsuitable for any other cause to serve as a juror.' " *State v. Miller*, 7th Dist. No. 17 MA 0120, 2018-Ohio-5127, ¶ 17, quoting Crim.R. 24(C)(14). Further, when an appellant exhausts his or her peremptory challenges in voir dire, we "consider the merits of the denial of a for cause challenge." *State v. Cruz*, 12th Dist. No. CA2012-03-059, 2013-Ohio-215, ¶ 28, citing *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 182. "The determination of whether a prospective juror should be disqualified for cause is a discretionary function of the trial court and will not be reversed on appeal absent an abuse of that discretion." *Cruz* at ¶ 28, citing *Miller,* 2010-Ohio-1722, at ¶ 21, citing *State v. Nields*, 93 Ohio St.3d 6, 20-21 (2001).

{¶ 47} The majority states in paragraphs 23 and 24:

> We recognize that sexual assault may result in continuing trauma for the victim for a very long time. We further recognize that continuing trauma may not be apparent to an outside observer. We consider this very carefully. Our concern is whether continuing trauma would prevent a juror from being fair and impartial. It is not a question of whether there is an indication of continuing trauma, but rather whether continuing trauma prevents a juror from being fair and impartial.

> Unlike *Zerla*, in the present case, none of the prospective jurors indicated that continuing trauma would prevent them from being fair and impartial. Prospective Juror 4, Prospective Juror 5, and Prospective Juror 15 shared information regarding their prior experiences with sexual assault with the trial court and counsel. All four prospective jurors at issue indicated they could be fair and impartial, notwithstanding their prior experiences as victims of sexual assault. As explained above, we give deference to the trial court's ability to see and hear a prospective juror during voir dire and the effect of those observations in evaluating the prospective juror's ability to be fair and impartial. Under the circumstances presented in this case, the trial court did not act unreasonably, arbitrarily, or unconscionably in denying appellant's challenges for cause of Prospective Juror 5.

"Often one's own bias arising from circumstances in which one is involved is a thing most difficult to realize." *Webster v. Fisher*, 5th Dist. No. 76-CA-10, 1997 WL 200756, 1977 Ohio App. LEXIS 10279, *8 (May 11, 1977). Because of the similarities of the crime(s) Prospective

Juror 5 had experienced with the crimes charged against appellant, more questioning should have occurred about lingering trauma and its effects on Prospective Juror 5's ability to be fair and impartial. There is little discussion in the record of voir dire about Prospective Juror 5's circumstances.

{¶ 48} Added to this, the circumstances of not having the jury questionnaires make it difficult to impossible to test the trial court's use of its discretion in denying appellant's motion for cause with respect to Prospective Juror 5. We cannot assume constitutionality without the ability to at least examine the jury questionnaires to ensure the efficacy of the trial court's ruling in denying appellant's challenge for cause as to Prospective Juror 5, being required to "consider the merits of the denial of a for cause challenge." (Citations omitted.) *Cruz* at ¶ 28.

{¶ 49} The selection of a fair jury of one's peers is critical to a constitutionally fair criminal trial, according to the Sixth Amendment to the U.S. Constitution as well as the requirements of procedural due process as provided in the Fourteenth and perhaps the Fifth Amendments thereto. Because the record does not contain jurors' questionnaires to test the trial court's rulings in voir dire against the record, and because the trial court should not have denied appellant's motion for cause, based on the close nature of the allegations to Prospective Juror 5's own personal experiences and did not at least inquire further, I would apply *Zerla* and find that appellant's trial lacked the constitutional underpinnings for a fair trial, reversing and remanding to the trial court with instructions to hold a new trial.

_____